UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SHELBY ALLEN,**

                **Plaintiff,**

**-vs-**                                              **Case No. 6:07-cv-1588-Orl-19GJK**

**PROGRESS ENERGY, INC.,**

                **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment by Progress Energy (Doc. No. 40, filed Sept. 16, 2008);

2. Index and Exhibits in Support of Motion for Summary Judgment by Progress Energy (Doc. No. 56, filed Feb. 19, 2009);[1] and

3. Memorandum in Opposition by Plaintiff Shelby Allen to Progress Energy's Motion for Summary Judgment (Doc. No. 43, filed Oct. 20, 2008).

## Background

Plaintiff Shelby Allen brought this action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615-54 (2006), alleging that her former employer, Progress Energy ("Progress"), interfered with her right to leave under the Act and terminated her in retaliation for taking FMLA leave. (Doc. No. 1, filed Oct. 4, 2007.) Progress now moves for summary judgment on both of Allen's claims. (Doc. No. 40.)

---

[1] Progress originally filed the index and exhibits at docket number 41, but the Court struck these documents from the record because they contained Allen's unredacted social security number. (Doc. No. 54, filed Feb. 18, 2009.) Citations throughout this Order to "Ex. __" are to the exhibits attached to this refiled exhibit.

**I.      Factual Background**

The facts underlying Allen's claims are not in dispute.[2]  Allen began working for Progress on August 1, 2005 as a customer service representative.  (Pl. Dep. at 66-67.)  She later became an operations support assistant, and her new supervisor was James Cowling.  (*Id.* at 71.)  Because this position required her to enter employees' time sheets each day, Allen was aware that it was important for her not to miss work.  (*Id.* at 72.)  Nevertheless, Allen missed a substantial amount of work.  (*See, e.g.*, *id.* at 127.)  She used all of her sick time and paid vacation but continued to submit "sick hours" even though she was not entitled to them.  (*Id.*)

Around late April or early May of 2007, Allen informed Cowling that she was pregnant.  (*Id.* at 130.)  During that time, she missed several days of work, stating that she was unable to work due to morning sickness and dehydration from vomiting.  (*Id.* at 131-32, 135.)   In light of these absences, Cowling had a discussion with Allen about her attendance.  (*Id.* at 192-93.)  Nevertheless, Allen again missed work on May 8, 9, and 16.  (*Id.* at 162, 166, 169; Ex. 12; Ex.14; Ex. 15.)

The last day Allen attended work was May 15, 2007, and the last time she spoke to Cowling was May 16, 2007.  (Pl. Dep. at 174-75, 195-96; Ex. 19.)  This final communication with Cowling was an email stating:

---

[2]      Allen does not recite facts in her responsive memorandum, nor does she indicate any disagreement with Progress' recitation of facts.  Nevertheless, she argues, in a footnote, that most of Progress' exhibits should be disregarded because they do not constitute sworn statements and therefore are not "authenticated" according to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 43 at 8 n.5 (citing *Roger Kennedy Constr. Inc. v. Amerisure, Ins., Co.*, 506 F. Supp. 2d 1185, 1192 (M.D. Fla. 2007); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003)).) However, all the exhibits cited in Progress' Motion for Summary Judgment were presented to Allen during her deposition and acknowledged by her.  (*See* Doc. No. 40 (citing, in conjunction with each exhibit, the portion of Allen's deposition where she was presented with the exhibit and discussed the exhibit's contents).)  Thus, while Allen's objection is technically correct, the facts contained in these exhibits are also established by her own deposition testimony.

> Hi Jim,
> I wanted to let you know I won[']t be in today. Let me know if you would like a doctor[']s note. . . .

(Ex. 15.)

Around this same time, Allen applied for short term disability benefits through Progress' third party disability provider, Liberty Mutual ("Liberty"). (Pl. Dep. at 144-45.) In support of this claim, her doctor faxed a "restrictions form" to Liberty which indicated that she was to be on light duty "one month prior to EDC to 6 weeks post partum." (*Id.* at 177-78; Ex. 16.) Liberty had no other medical documentation on Allen, and it denied her claim because the paperwork she directed her doctor to submit actually indicated that she could work. (Pl. Dep. at 179, Ex. 17.) On May 25, 2007, Liberty sent Allen a letter to this effect. (Ex. 17) Also, at some point before June 8, 2007, Liberty appears to have informed Progress that Allen applied for short term disability and her request was denied. (*See* Ex. 19.)

On May 29, 2007, Allen spoke with Melissa Diener in Human Resources regarding Allen's morning sickness. (Pl. Dep. at 140.) Allen indicated that she thought her condition was covered by the FMLA, and Diener asked Allen if she was familiar with the process of applying for FMLA leave. (*Id.* at 148.) Allen responded that she was familiar with it, having previously applied for FMLA leave due to asthma. (*Id.*) On that same day, Diener emailed the FMLA forms to Allen and instructed her to complete and return them as she had done before. (Diener Dep. at 54.) Allen acknowledges receiving these forms. (Pl. Dep. at 149.)

That same day, however, Allen was hospitalized due to her pregnancy. (*Id.* at 149-50.) She stayed overnight, and the doctor placed her on "very strict bed rest" upon discharge. (*Id.*) Allen testified that she left her bed only to use the bathroom, though, at one point, she might have "tried

getting another doctor's note or something faxed in." (*Id.* at 150.) Later, while still on bed rest, she went to a doctor's appointment, but she did not print out the FMLA forms and take them to the doctor for completion. (*Id.* at 155.)

On June 8, 2007, Progress mailed a letter to Allen stating that she had missed work for almost an entire month without providing medical documentation supporting the absences. (*Id.* at 201; Ex. 19.) The letter instructed Allen to either return to work on June 13, 2008, or if she was unable to do so, to provide "adequate information concerning [her] medical condition that would support [her] past and future absences by this date." (Ex. 19.) If she did neither of these things, Progress explained that it would "assume that [she] did not wish to remain employed . . . ." (*Id.*)

Allen admits that she received this letter. (Pl. Dep. at 201.) However, she did not contact Progress as instructed in the letter. (*Id.* at 199.) Instead, on June 12, 2007, Allen contacted her case manager at Liberty and requested that the case manager fax the medical documentation in Allen's disability application to Progress. (*Id.* at 199, 202-04.) Liberty did so, but none of the medical forms it faxed to Progress indicated that Allen could not work. (*Id.* at 183, 202-207; Ex. 21.) On each of the three restrictions forms signed by Allen's doctor, there was a check mark on the box indicating the answer "yes" to the question whether the patient "can return to work full-time now within the restrictions listed above." (Pl. Dep. at 202-07; Ex. 21.)

The next day, on June 13, 2007, Progress mailed a letter to Allen stating that she had been terminated. (Ex. 19.) Specifically, the letter stated that Allen last reported to work on May 15, 2007

and had no contact with her supervisor since May 21, 2007.[3] (*Id.*) Further, she had failed to reply "as requested" to the certified letter Progress sent on June 8, 2007. (*Id.*)

Nearly two weeks later, on June 25, 2007, Allen went to her doctor to see the medical documents that she had instructed Liberty to fax to Progress. (Pl. Dep. at 217-19.) During her deposition, Allen stated that she had not previously looked at the documents, but she knew that she had told her doctor that she could not work. (*Id.* at 215.) She told the nurse at the office that she had been terminated as a result of the form stating that she could work. (*Id.* at 217-18.) The nurse then scratched out the box that was checked "yes," inserted the word "error," checked the "no" box, and submitted the form to Liberty. (*Id.* at 218-21.) Allen's doctor did not review the corrected form before the nurse submitted it. (*Id.* at 220-21.)

## II.   Progress' Motion for Summary Judgment

In its Motion for Summary Judgment, Progress argues that Allen cannot demonstrate the existence of genuine issues of material fact with respect to either of her claims. (Doc. No. 40.) Regarding Allen's "interference" claim, Progress argues that Allen's failure to submit the requested medical certification is fatal to her claim, that none of the documentation she provided indicated that she could not perform her job, and that the medical documentation submitted after Allen's termination does not salvage her claim. (*Id.* at 9-20.) Progress contends that Allen's retaliation claim fails because she was ineligible for FMLA leave. (*Id.* at 20-23.) Further, Allen cannot rebut Progress' legitimate, non-retaliatory reason for her termination: that Allen was fired for poor attendance. (*Id.*) Finally, regarding damages, Progress argues that (1) Allen cannot claim damages

---

[3] This date appears to refer to the last time Allen left a voice message for Cowling, not the last time she actually spoke with him. (*See* Pl. Dep. at 174-75.)

for technical violations of the FMLA unless she demonstrates a cognizable injury that flowed from the violation; and (2) she is prohibited from putting on evidence of damages at trial because she did not comply with her duty to disclose her calculation of damages under Federal Rule of Civil Procedure 26.  (*Id.* at 23-26.)

Allen responds that her failure to provide medical certification is not germane because Progress failed in the first place to follow the Department of Labor's regulations regarding the procedures for requesting certification.  (Doc. No. 43 at 4-9.)  Allen also argues that she has produced evidence that she was incapacitated, and therefore eligible for FMLA leave, through the corrected doctor's note and her own testimony.  (*Id.* at 9-12.)  As for her retaliation claim, Allen contends that timing of her termination and the fact that Progress claims to have terminated her for missing work are enough to raise a genuine issue of material fact whether she was actually terminated for taking FMLA leave.  (*Id.* at 12-15.)  Finally, regarding Progress' final two arguments, Allen responds that (1) her loss of employment is an obvious injury that flowed from Progress' failure to follow FMLA guidelines; and (2) she disclosed during discovery that she was unemployed for several months after being terminated.  (*Id.* at 16-17.)

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  An issue of fact is

"genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## Analysis

The FMLA grants eligible employees the right to take up to twelve workweeks of unpaid leave annually for a number of reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2006). As an enforcement mechanism, "the Act creates a private right of action to seek equitable relief and money damages against employers who 'interfere with, restrain, or deny

the exercise of or the attempt to exercise' FMLA rights." *Hurlburt v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting 29 U.S.C. §§ 2615(a)(1), 2617(a) (2006)) (internal citations omitted). The Eleventh Circuit has recognized that § 2615(a) creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Id.* (citing *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)) (internal citations omitted).

**I.      Interference Claim**

"To establish an interference claim [under the FMLA], an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id.* (citation and internal quotation marks omitted). The employee need not demonstrate that the employer "intended to deny the benefit—the employer's motives are irrelevant." *Id.* (citation and internal quotation marks omitted).

Nevertheless, even where this basic requirement is met, an employer may avoid liability under the FMLA in certain circumstances. Two relevant examples arise from the statutory language and interpretative regulations promulgated by the Department of Labor ("DOL"), and both concern instances where the employer may properly deny FMLA benefits even if the employee otherwise meets the Act's criteria.[4]  First, the employer may properly deny FMLA leave when the employee

---

[4]      The court will cite to the DOL regulations which were in effect at the time Allen filed this suit in 2007. Further, as noted by the Eleventh Circuit in *Hurlbert*:

> Congress authorized the Secretary of Labor to promulgate regulations
(continued...)

fails to satisfy the employee's requirement to provide the employer with medical documentation that supports the employee's request for leave. *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (citing 29 U.S.C. § 2613(a) (2006)); *Robertson v. Amtrak/Nat'l R.R. Passenger Corp.*, 400 F. Supp. 2d 612, 626-27 (S.D.N.Y. 2005); *see also* 29 C.F.R. § 825.306(b) (2007) (establishing requirements for the medical certification), *amended by* 29 C.F.R. § 825.306 (2009). Second, where an employee claims to be incapacitated but submits medical documentation indicating that the employee can in fact work, the employer may rely on the doctor's "negative certification" in denying leave. *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998) (observing that under 29 C.F.R. § 208(a)(2) (2007), *amended by* 29 C.F.R. § 825.301 (2009), the employee must state a "qualifying reason for the needed leave").

The Court will first analyze whether a *prima facie* case exists. If it does, the Court will then determine whether Allen's entitlement to FMLA leave is defeated by any of the described exceptions.

### A. Whether Allen Has Established a Prima Facie Case

Allen's basic entitlement to FMLA leave depends on whether she had a "serious health condition" within the meaning of the Act. 29 U.S.C. § 2612(a)(1)(D). Under the FMLA, "serious

---

[4](...continued)
"necessary to carry out" the FMLA, 29 U.S.C. § 2654, and "[t]he Secretary's judgment that a particular regulation fits within this statutory constraint must be given considerable weight." *Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 86 (2002). Here, there is no claim that any applicable regulations promulgated by the Secretary are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* (internal quotations omitted).

*Hurlbert*, 439 F.3d at 1294 n.10 (parallel citation omitted). Likewise, in this case neither party disputes the validity of the DOL's regulations.

health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11) (2006); *see also Hurlburt*, 439 F.3d at 1294. DOL regulations provide that a "serious health condition" may include incapacity "due to pregnancy, or for prenatal care," 29 C.F.R. § 825.114(a)(2)(ii) (2007), *amended by* 29 C.F.R. §§ 825.113, 825.115 (2009), including, as an example, "severe morning sickness," *id.* § 825.114(e).

Progress argues that Allen cannot demonstrate that her bouts of morning sickness were sufficient to incapacitate her. The company relies on the three forms Allen's doctor initially submitted to Liberty indicating that she was able to work. (Doc. No. 40 at 13-16.) Allen replies that the ultimate question, at least for purposes of establishing a *prima facie* case, is whether she was actually incapacitated; therefore, the information she provided at the time she requested FMLA leave is not determinative. (Doc. No. 43 at 9-11.) According to Allen, the later-submitted documentation establishing that she was incapacitated, coupled with her own testimony to the same effect, demonstrates a genuine issue of material fact. (*Id.* at 11.)

Allen has the better argument on this issue. The Eleventh Circuit's case law is fairly clear that a *prima facie* case to establish interference does not depend on what the employer knew at the time it denied the benefit. *Hurlbert*, 439 F.3d at 1293; *Strickland*, 239 F.3d at 1206. Thus, the issue is whether Allen was in fact incapacitated during the time she missed work, not whether Progress made a reasonable decision to deny her leave based on the documentation she provided. The record contains three certifications stating that Allen was not incapacitated, (Ex. N), one certification by a nurse stating that the three previous certifications were in error, (Ex. P), and the subjective testimony of Allen. These conflicting sources of evidence create a genuine issue of material fact.

### B. Whether Allen was Nevertheless Unentitled to FMLA Leave Under DOL Regulations

Even though Allen has established a genuine issue of material fact concerning whether she in fact suffered from a "serious medical condition" during the time she was absent from work, her rights under the FMLA are limited by the Act's language and the DOL's interpretive regulations. *See, e.g.*, *Cash*, 231 F.3d at 1307. As mentioned above, Progress argues that Allen's entitlement to FMLA leave was defeated by (1) her failure to submit proper medical certification; and (2) her submission of medical documentation indicating that she was able to work. The Court agrees with this second argument.

The 2007 version of 29 C.F.R. § 825.208(a)(2) explained that "an employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave." In addition, under the statute, employers have the right to ask for a medical certification of an employee's condition before granting or denying FMLA leave. 29 U.S.C. § 2613(a). That certification must contain, among other things, a "statement that the employee is unable to perform the functions of the position of the employee." *Id.* § 2613(b)(4)(B). Where a certification appears incomplete, the employer must allow the employee reasonable time to remedy any deficiencies. 29 C.F.R. § 825.305(d) (2007), *amended by* 29 C.F.R. § 825.305 (2009).

These various duties of communication create a problem when the employee initially tells the employer that she has a qualifying condition but then submits documentation stating the opposite. In *Stoops*, the Seventh Circuit addressed the legal effect of a later submitted "negative certification." *Stoops*, 141 F.3d at 311. The plaintiff initially requested leave due to "chronic

fatigue syndrome," and the employer requested supporting medical documentation. *Id.* The employee then submitted documentation stating that he could work. *Id.* On these facts, the Seventh Circuit determined that the employee failed to provide the employer with a "qualifying reason" for the FMLA leave, and the employer therefore had no obligation to grant that leave. *Id.* Further, the employer had no duty to request a medical opinion that would comport with employee's characterization of his condition. *Id.* In sum:

> Where an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence. And that medical evidence should come from the employee in time to save his job, not during a subsequent law suit.

*Id.* at 314.

Likewise, in *Nawrocki v. United Methodist Retirement Communities, Inc.*, 174 F. App'x 334, 338 (6th Cir. 2006), the employee submitted medical documentation that contradicted her claim that she had a qualifying medical condition. The Sixth Circuit noted that "[i]n general, if an employer lacks sufficient information about an employee's reason for taking leave, it should inquire further to ascertain whether the employee's leave was potentially FMLA-qualifying." *Id.* "However[,] an employer is entitled to rely on a 'negative certification' in denying FMLA leave." *Id.* Thus, the employer was justified in relying on the documentation the employee submitted, and the court concluded that she therefore was not "denied FMLA rights." *Id.*

The holdings in *Stoops* and *Nowrocki* have not been specifically addressed by the Eleventh Circuit or any other federal appellate court. However, in *Cash*, 231 F.3d at 1307, the Eleventh Circuit briefly noted, without addressing the negative certification rule specifically, that an employee who submitted a form stating that her conditions were controlled by medicine did not present

"certification that her medical conditions met the statutory standard, and therefore the medical leave that she did take was not under the auspices of the FMLA."

In addition, a number district courts have followed the specific reasoning of *Stoops*. *E.g.*, *Hoffman v. Prof'l Med. Team*, 270 F. Supp. 2d 954, 964 (W.D. Mich. 2003); *Sicoli v. Nabisco Biscuit Co.*, No. Civ. A. 96-6053, 1998 WL 297639, at *12-13 (E.D. Pa. June 8, 1998). And while at least two district courts have declined to apply the negative certification rule, both cases appear distinguishable. *Paulson v. Superior Plating, Inc.*, No. 03-3118, 2004 WL 2203408, at *7 (D. Minn. 2004) (distinguishing *Stoops* because a question of fact existed whether the employee knew of the negative certification); *Lara v. Central Grocers Co-op, Inc.*, No. 00-C-7828, 2002 WL 31006132, at *5-6 (N.D. Ill. Sept. 5, 2002) (distinguishing *Stoops* based on factual issues concerning whether the employee was aware of the negative certification and whether the employer had received both positive and negative certifications). Both of these courts found that an issue of fact existed concerning whether the employee could be charged with knowledge of the negative certification which was provided to the employer. *Paulson*, 2004 WL 2203408, at *6; *Lara*, 2002 WL 31006132, at *5. Here, Liberty informed Allen that she was ineligible for short-term disability benefits based on the medical documentation she submitted. (Pl. Dep. at 179.) Nevertheless, she later asked Liberty to fax that same documentation to Progress. (*Id.*)

Allen does not specifically address the negative certification rule in her Response to Progress' Motion. However, she makes several arguments that appear to be aimed at the reasoning in *Stoops*, *Nawrocki*, and related cases. She first argues that her submission (via Liberty's fax) of the medical documentation should not matter because Progress failed to properly invoke the requirement for her to submit medical documentation in the first place. (Doc. No. 43 at 11-12.)

While an issue of fact might exist concerning whether Progress followed the proper procedures for requesting medical certification,[5] such an error would not matter in this case. First, Allen acknowledges that she received the FMLA forms requiring her to submit medical certification, and she therefore had notice of this requirement. As another judge of this District noted:

> This is not a situation where an employer gives insufficient notice of the necessity of a medical certification, the employee is unable to have a doctor complete a certification form, and, as a result, the employee is denied FMLA benefits. If it were—if [the employer] had terminated [the employee] because [she] commenced leave after being unable to have a physician complete the certification form—then § 825.305(c) might stand as an impediment to [the employer's] action.

*Dillon v. Carlton*, 977 F. Supp. 1155, 1159 (M.D. Fla. 1997). Second and more importantly, Progress' compliance with the procedures for requesting medical certification has no bearing on the fact that Allen actually did submit documentation, albeit not in the exact form Progress requested, and that documentation indicated that she was not entitled to FMLA leave.

In addition, Allen argues that Progress failed to give her fifteen days to submit her medical certification. (Doc. No. 43 at 8-9.) However, the fifteen day period to which she refers applies in cases where the employer denies FMLA leave based on the employee's failure to return documentation, not in cases where the employee submits documentation indicating that she is not entitled to leave. Thus, even if Progress failed to comply with this timing requirement, the error was harmless because Allen's own submission defeated her entitlement to FMLA benefits.[6]

---

[5] For instance, under 29 C.F.R. § 825.301 (2007), when an employee has already begun leave but not yet complied with the procedures for requesting FMLA leave, the employer must send written notice of the employer's procedures for requesting FMLA leave to the employee's "address of record."

[6] Allen argues, as a related matter, that it "defies logic" to think that Progress denied her leave due to her negative certification but then asked her to complete the FMLA documents it emailed to her. (Doc. No. 43 at 11.) As an initial matter, it appears Allen's chronology is wrong.
(continued...)

As a final matter, it is important to note that Allen's negative certification came on the day before her deadline to submit documents supporting her FMLA leave. (Pl. Dep. at 199, 202-04.) Further, she had very little contact with Progress in the month that she had been absent from work,[7] and she neither filled out the FMLA forms that Progress had asked her to complete nor told Progress that she needed more time to fill them out. This is not a case where the employee has been diligent in communicating her need for FMLA leave, accidently provides a negative certification, and is denied leave before having an opportunity to fix the error. *See Stoops*, 141 F.3d at 313-14 (discussing the employee's lack of diligence and explaining that the employee had not taken any steps to correct the negative certification he had previously provided). Nor is this a case where the employer receives both negative and affirmative medical certifications and chooses to ignore the affirmative certification. *C.f. Lara*, 2002 WL 31006132, at *5 (observing that the employee's doctor indicated both that the employee could and could not work; thus, a genuine issue of material fact existed as to whether the employee stated a qualifying reason for leave). In either of these

---

[6](...continued)
According to the record, Progress received the negative certification on June 12, 2007, after it requested that Allen submit the FMLA paperwork. (Pl. Dep. at 199, 202-203.) In any event, even assuming that Progress' sole motivation for denying FMLA leave was Allen's failure to submit paperwork, Allen has not presented any reasons why Progress' motivation is legally significant. As Allen acknowledges, the Eleventh Circuit has explained that an employer's actual motive for denying leave is "irrelevant" with respect to an interference claim. *Hurlbert*, 439 F.3d at 1293. Further, Allen identifies nothing in the DOL regulations which suggests that an employer's motive matters with respect to the issue of whether the employee stated a "qualifying reason."

[7] The record reflects that Allen emailed Cowling on May 16 and spoke to Deiner on May 29. (Ex. J; Diener Dep. at 54.) In addition, Allen apparently left some voicemail messages for Cowling after May 16 which he failed to return. (Pl. Dep. at 174-75.) Cowling testified that Allen may have indicated in these messages that she was sick and would not be coming in to work. (Cowling Dep. at 28.) However, it appears that Allen did not contact Progress after her May 29, 2007 conversation with Diener, nor did she direct her husband or anyone else to contact Progress on her behalf, with the exception of the fax that she directed Liberty to send on June 12, 2007.

situations, the question of whether the employee stated a qualifying reason for leave presents a closer question. But under the facts of this case, Progress appropriately denied Allen's FMLA leave based on her submission of medical documentation stating that she could work. *Stoops*, 141 F.3d at 314.

Accordingly, the undisputed evidence establishes that Allen was not entitled to FMLA leave, and summary judgment therefore must be granted on her interference claim.

## II. Retaliation

Employees who are not entitled to FMLA leave may not bring a retaliation claim under the Act based on their attempt to take leave. *Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004); *Cash*, 231 F.3d at 1307; *Nawrocki*, 174 F. App'x at 338-39. As explained above, Allen was not entitled to FMLA leave; therefore, summary judgment necessarily must be granted on her retaliation claim.[8]

## Conclusion

The Motion for Summary Judgment by Progress Energy (Doc. No. 40, filed Sept. 16, 2008) is **GRANTED**. The Clerk shall enter judgment in favor of Defendant Progress Energy and close the case file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 20, 2009.

---

[8] Because Allen has failed to demonstrate a genuine issue of material fact with respect to her two FMLA claims, the Court will not address Progress' arguments concerning the issue of damages.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record